The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEITH EMMANUEL; RICHARD HOMCHICK; and CHARLES PETERS, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY, a municipal corporation and responsible entity of the KING COUNTY SHERIFF"S OFFICE and the KING COUNTY PROSECUTING ATTORNEY'S OFFICE; CITY OF BELLEVUE, a municipal corporation and responsible entity of the BELLEVUE POLICE DEPARTMENT; JOHN URQUHART, individually and in his official capacity as King County Sheriff; DANIEL SATTERBERG, individually and in his official capacity as King County Prosecutor; STEVEN MYLETT, individually and in his official capacity as Bellevue Police Chief; and JOHN DOES 1-10;<br><br>Defendants. | Case No.: C18-00377-JLR<br><br>PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY<br><br>*Noted for Motion Calendar*:<br>**May 11, 2018** |

## I. INTRODUCTION AND RELIEF REQUESTED

This action arises out of Defendants' malicious and indiscriminate campaign to attribute to Plaintiffs criminal activity concerning human trafficking and sex slavery that Plaintiffs did not perform and with which they were not charged. In January 2016, Plaintiffs were arrested and charged with promoting prostitution in the second degree for "advanc[ing] prostitution" under RCW 9A.88.080(1)(b), namely for writing reviews and sharing experiences on a private online message board. Whereas plaintiff Richard Homchick's prosecution for promoting prostitution has ended pursuant to a plea deal entered in February 2016, plaintiffs Keith Emmanuel and Charles Peters' criminal prosecutions are ongoing. In both cases, Defendants continue to conflate Plaintiffs' arrests with human trafficking and sex slavery as part of a concerted effort to secure special interest monies and manipulate media coverage. The instant lawsuit seeks damages arising from this conduct, and injunctive relief prohibiting such conduct in the future.

To that end, the operative Complaint asserts eight causes of action: abuse of process and due process violations under 42 U.S.C. § 1983 (Claims 1-2); defamation and false light (Claims 3-4); aiding and abetting defamation and false light (Claims 5-6); and intentional and negligent infliction of emotional distress (Claims 7-8).

In their motion, the King County-Related Defendants ("KC Defendants") do not challenge Claims 3-8 as to any of the plaintiffs; and, with respect to Claims 1-2, they do not seek to dismiss those claims as to Mr. Emmanuel and Mr. Peters. In fact, even as to Mr. Homchick, the KC Defendants do not substantively contest that he has asserted viable causes of action of abuse of process and due process under § 1983. Instead, the sole issue that the KC Defendants

PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED
DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY (C18-00377-JLR) - 2

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
T 206.899.1996   F 973.232.0887

raise in their motion to dismiss is whether *Heck v. Humphrey* bars Mr. Homchick's § 1983 claims under the premise that, if successful, the claims would necessarily imply the invalidity of his more than two-year-old plea deal. As explained below, they would not.

Likewise, the KC Defendants' request for a stay of Mr. Emmanuel and Mr. Peters' claims under *Younger v. Harris* fails. While a stay may be appropriate for other reasons, it is not appropriate under the *Younger* abstention doctrine.[1]

For the following reasons, Plaintiffs respectfully request that the Court deny the KC Defendants' motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiffs incorporate by reference the allegations of the Complaint, which for purposes of this motion are presumed to be true. *See* Dkt. 10. In addition, Plaintiffs incorporate by reference the external state court records that the KC Defendants selectively include with the instant motion. *See* Dkt. 18.

## III. ISSUES PRESENTED

1. Should the Court deny the KC Defendants' motion to dismiss plaintiff Richard Homchick's federal claims under *Heck v. Humphrey*?

2. Should the Court deny the KC Defendant's motion to stay plaintiffs Keith Emmanuel and Charles Peters' claims under *Younger v. Harris*?

---

[1] It is Plaintiffs' position that, due to the ongoing criminal prosecution of two plaintiffs, a stay based on Fifth Amendment considerations may well be warranted. Plaintiffs have conferred with Defendants concerning that issue (*see* Dkt. 21 at 2) but were not able to presently secure from Defendants a stipulation to stay on that basis. Plaintiff intends to raise this issue to the Court separately.

PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY (C18-00377-JLR) - 3

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
T 206.899.1996   F 973.232.0887

## IV. EVIDENCE RELIED UPON

This Opposition relies upon the Complaint in this action and the pleadings and files herein, including, where appropriate, the state court papers introduced by KC Defendants on their motion.

## V. LEGAL AUTHORITY

### A. Standard of Review

There is a strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26). The Court should not dismiss Plaintiffs' claims under FRCP 12 (b)(6) "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [Plaintiffs] to relief." *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1988). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the Plaintiffs. *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) (denying 12(b)(6) motion).

The court must read the complaint "fully and fairly." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 790 (9th Cir. 2011). Complaints need only allege facts with sufficient specificity to notify a defendant of a plaintiff's claims. *Id*. So long as a plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be addressed on evidentiary grounds. *Id*.

**B.  *Heck v. Humphrey* Does <u>Not</u> Bar Plaintiff Richard Homchick's Claims**

1. <u>For the *Heck* bar to apply, the § 1983 claims must necessarily imply the invalidity of the underlying conviction.</u>

KC Defendants are incorrect that *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364 (1994), bars Mr. Homchick's claims. In *Heck*, the United States Supreme Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487 (emphasis added).  But where a plaintiff's action, "even if successful will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id*. (emphasis in original; footnotes omitted).

For *Heck* to apply, the conviction must be "fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). By analogy, a type of claim implicated by *Heck* is malicious prosecution, which would dictate the termination of criminal proceedings. *Heck*, 512 U.S. at 484; *see also Wallace v. Kato*, 549 U.S. 384, 392, 127 S. Ct. 1091 (2007). On the other hand, a claim for excessive force ordinarily would not be implicated, as it would not render invalid an underlying conviction for actions occurring prior to the arrest. *See Campos v. City of Merced*, 709 F. Supp. 2d 944, 961 (E.D. Cal. Apr. 28, 2010) (citing *Smithart*, 79 F.3d at 952-53).

2. <u>Mr. Homchick's claims do not necessarily imply the invalidity of his plea deal.</u>

KC Defendants argue that Mr. Homchick's claims are barred by *Heck* "because they imply the invalidity of his conviction for Promoting Prostitution in the Second Degree." Dkt. 17 at 9.  That is incorrect.

To find that *Heck* does not apply to the present case, the Court need look no further than the timing of the conduct giving rise to Mr. Homchick's civil claims vis-à-vis the conduct underlying his criminal conviction.  In addressing the scope of *Heck*, the Ninth Circuit in *Smith v. City of Hemet* recognized that an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct, temporally or spatially, from the factual basis for the person's conviction. 394 F.3d 689, 695, 699 (9th Cir. 2005).  The *Smith* court noted that the plaintiff would be allowed to bring a § 1983 action if the use of excessive force occurred *subsequent* to the conduct on which his conviction was based.  *Id*. at 698.

The same result is dictated here. In the charging papers, King County Prosecuting Attorney's Office makes clear that the conduct giving rise to the charge of promoting prostitution in the second degree, for which Mr. Homchick accepted a plea deal, covered the time period of January 7, 2013 to January 6, 2016.  Dkt. 18-1 at 122-23 (Ex. 7).  The press conference where Plaintiffs' instant claims first accrued was held on January 7, 2016, *subsequent* to the conduct on which Mr. Homchick's conviction was based. Dkt. 17 at 5; Dkt. 10 at 8-12.  As such, any determination in this case that the KC Defendants deprived Mr. Homchick (or other plaintiffs) of Constitutional rights in connection with the January 7, 2016,

press conference or thereafter, would not be inconsistent with the plea deal.[2] *See Smith*, 394 F.3d at 696-99 (where a plaintiff's § 1983 claim arises out of defendant's alleged conduct *after* he had committed the acts on which his conviction was based, any verdict in his favor would not imply that the conviction was invalid); *accord Curry v. Baca*, 497 F. Supp. 2d 1128, 1133 (C.D. Cal. July 23, 2007) (ruling that *Smith*, *supra*, "reads a temporal requirement into the application of *Heck* in Section 1983 actions"); *see also Sanchez v. DEA*, No. 14-236-RMP, 2015 WL 2453452, at *15-16 (E.D. Wash. May 22, 2015) (denying application of *Heck* on plaintiff's excessive force claim where the "controlled buy already had been completed when [a]gent . . . shot [plaintiff]").

Moreover, while KC Defendants misguidedly suggest that Mr. Homchick invalidate his conviction elsewhere before filing the instant suit (Dkt. 17 at 9), they do not explain where he should be turning. That is because there is apparently nowhere to turn. To the extent Mr. Homchick is in fact required to exhaust his remedies with respect to his state court conviction, which he is not, he seemingly has no avenues for redress, including via a writ for habeas corpus. *See Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002) (noting that where a plaintiff is not in custody, he has no right to a writ for habeas corpus under *Heck*). In such

---

[2] Far from one and done, KC Defendants continued to associate Mr. Homchick (and the other plaintiffs) with extraneous criminal activity after the initial press conference, including as recently as September 17, 2017, nearly 19 months after his plea deal. Dkt. 10 at 18, ¶¶ 82-85 (referencing a symposium at the Seattle University School of Law where Mr. Homchick's name and photograph were broadcast in connection with narratives of human trafficking at a domestic violence event). As the Complaint alleges, Mr. Homchick legitimately expected that his punishment for promoting prostitution would end after he accepted the terms of the plea deal, "not that he would be further humiliated or punished unabated, including being associated with crimes that he was never charged with and did not commit." *Id*. at 18, ¶ 84.

cases, the Ninth Circuit has held that a plaintiff may maintain a § 1983 action, even if success in that action implied the invalidity of the underlying conviction. *Id*. at 876.

However, even setting aside the above-listed temporal issues and apparent lack of alternate recourse, there is no support for the argument that the two § 1983 claims necessarily imply the invalidity of Mr. Homchick's plea. Neither claim requires, as an element of proof, that King County lacked probable cause to bring the action for promoting prostitution, as would be the case had Plaintiffs asserted a claim for malicious prosecution. Nor will proving that, after Mr. Homchick's arrest, King County violated his due process rights or abused the course of normal proceedings (including by increasing publicity and/or deliberately mischaracterizing the arrest and conviction, regardless of any external influences) impugn Mr. Homchick's underlying plea that he "advanced the profession of prostitution through . . . internet activities . . .." Dkt. 17 at 6.  *See Curry*, 497 F. Supp. 2d at 1134 ("a blanket application of *Heck* in cases involving underlying criminal convictions that are based on the same facts as the Section 1983 action but have yet to be invalidated is not necessarily appropriate."); *cf. Lanuza v. Love*, 14-1641, 2015 WL 1282132, at *18-19 (Mar. 20, 2015 W.D. Wash. 2015) (Pechman J.) (noting in the context of accrual of claim, *Heck* did not bar abuse of process claim).[3]

---

[3] The cases that the KC Defendants cite either support plaintiffs' position or are inapposite. *See* Dkt. 17 at 11.  In *Guerroro v. Gates*, consistent with the above principles, the court allowed plaintiff's § 1983 excessive force claim to proceed.  442 F.3d 697, 703 (9th Cir. 2006) (noting that the "alleged use of excessive force during Guerrero's arrest does not preclude the possibility that Guerrero was still guilty of possession of narcotics").  And, while *Rogers v. Woolridge* dismissed, without explanation, plaintiff's § 1983 action, all of the claims in that action—*e.g.*, false arrest, involuntary guilty plea, ineffective assistance of counsel, conspiracy, necessarily implicated the validity of his plea conviction.  255 Fed. Appx. 862, 863 (5th Cir. 2007).  The same applied to the plaintiff's

Indeed, it is difficult to discern what exactly KC Defendants claim Mr. Homchick seeks to "negatively impact and chill" at this juncture with respect to his prosecution (*see* Dkt. 17 at 10), where he pled guilty more than two years ago, served "zero days in custody [and] 120 hours of community service," and received "standard assessments." Dkt. 17 at 6 (citing Dkt. 18-2, Ex. 14).  In this regard, KC Defendants' claim that Mr. Homchick seeks to "cast doubt" on his state criminal conviction through the instant suit (Dkt. 17 at 2) is not only illogical but substantively insufficient to trigger *Heck.  See Chambers v. Steiger*, No. C14-1678-MAT-JCC, 2015 U.S. Dist. LEXIS 175015, *18 (W.D. Wash. Oct. 29, 2015) (Theiler, Mag. J.) (for Heck to apply, "[i]t is not enough that the [§ 1983] claim cast doubt on a state-court conviction").[4] The select allegations from the 26-page Complaint that the KC Defendants quote do not change this result.  Dkt. 17 at 10-11. Specifically, the allegations concerning King County and its agents—including their "apparent conflicted interests and undue external influences, seeking out private monies, with strings attached, to cover budget shortfalls;" their submission of false affidavit(s) in a separate court case labeling Mr. Peters a "convicted human trafficker;" their unprecedented threats of sex offender registration; their "willful, wanton and reckless disregard of and deliberate indifference to Plaintiffs' constitutional rights;" their "[coercive] misleading public statements linking arrestees to human trafficking and other uncharged

---

claims for malicious and retaliatory prosecution in the case of *Moses v. Weirich.* No. 15-2806-JDT, 2016 WL 755649, at *3 (W.D. Tenn. Feb. 25, 2016).

[4] Although subsequent history of this case reveals some negative analysis, the cited principle at issue was seemingly unaffected subsequently. *See Chambers*, C14-1678-JCC, 2016 U.S. Dist. LEXIS 9058, at *1 (W.D. Wash. Jan. 20, 2016) (Coughenour, J.)

PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY (C18-00377-JLR) - 9

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
T 206.899.1996   F 973.232.0887

crimes"—are all relevant for establishing, without limitation, KC Defendants' state of mind on the defamation and false light claims and intentional infliction of emotional distress and the claim for punitive damages under § 1983. *Id.* (citations omitted).[5]  Aside from simply raising the issue, KC Defendants do not explain how exactly any of these allegations, if proven true, would invalidate Mr. Homchick's plea deal.  *See Faaita v. Liang*, Case No. 07-00601, 2009 WL 89197, at *14 (D. Haw. Jan. 14, 2009) ("When bringing a dispositive motion, the filing party must do more than merely raise an issue, expecting this court to research it before deciding it.").

For the above-stated reasons, the Court should not extend *Heck* to the claims at issue.

### C. *Younger v. Harris* Does <u>Not</u> Require Stay of Plaintiffs Keith Emmanuel and Charles Peters' Civil Claims

The general rule with respect to a plaintiff's right to initiate federal proceedings when parallel state proceedings are underway is that each court is "free to proceed in its own way and in its own time, without reference to the proceedings in the other court." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151-52 (9th Cir. 2007) (quoting *Kline v. Burke Const. Co.*, 260 U.S. 226, 43 S. Ct. 79 (1922)).  If a judgment is rendered in one of the courts and pleaded in the other, the effect of any judgment is to be determined by the principles of res judicata and collateral estoppel, if applicable, by the court in which the action is still pending.

---

[5] For avoidance of doubt, Mr. Homchick does not seek in this action to invalidate his plea deal on any purported ground that the plea deal was coerced.

PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY (C18-00377-JLR) - 10

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
T 206.899.1996   F 973.232.0887

The *Younger* abstention doctrine forbids federal courts *from enjoining* pending state court proceedings. *Younger v. Harris*, 401 U.S. 37, 41, 91 S. Ct. 746 (1971) (emphasis added). A "mere potential for conflict in the results of the adjudications does not, without more, warrant staying exercise of federal jurisdiction." *Roden*, 495 F. 3d at 1151. Thus, the doctrine is only applicable in the "narrow category of circumstances in which the federal court action would actually enjoin the [ongoing state] proceeding or have the practical effect of doing so." *Id*.

A district court should only abstain under *Younger*, or by extension grant a stay in a damages case under *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004), when: (i) there are ongoing state judicial proceedings; (ii) the proceedings implicate important state interests; (iii) the state proceedings provides the plaintiff with an adequate opportunity to raise federal claims and (iv) the federal action would enjoin, or have the practical effect of enjoining, the ongoing state court proceedings. *Roden*, 495 F. 3d at 1151 (internal citation omitted). All four elements must be "strictly satisfied," including the "vital and indispensable" fourth element which is not met, when, as in this instance, the federal action would neither enjoin the state court proceedings, nor have the practical effect of doing so. *Id*.

Contrary to the KC Defendants' repeated insinuations, Plaintiffs are not litigating in this case whether the financial arrangement between Demand Abolition and King County created an *actual* conflict of interest thereby triggering the disqualification of King County's Prosecuting Attorney's Office or warranting the dismissal of the charges against the state-court defendants. However, the "financial arrangement" between King County and Demand Abolition is relevant in this case as it informs, beyond just what falsehoods were being said, *why* they were said, and

it provides the context behind Defendants' arbitrary treatment of the Plaintiffs during their January 7, 2016 press conference and in various subsequent statements.

As laid out in the Complaint, Plaintiffs brought this lawsuit against Defendants' for "maliciously and indiscriminating attributing to Plaintiffs criminal activity concerning human trafficking and sex slavery that Plaintiffs did not perform" in statements made during a press conference covered and reported by national media outlets, in a subsequent press release issued jointly by King County and the City of Bellevue, and by King County agents in various media appearances, at symposium(s), and otherwise. Dkt. 10 at 2, ¶ 1.[6] And, as the Complaint unequivocally states:

> To be clear, this case does not seek to litigate the actual criminal charge, however unprecedented . . . Rather this lawsuit seeks to enjoin and seek damages for Defendants' ongoing efforts to vilify and humiliate Plaintiffs and to characterize their arrests as something they are not.

Dkt. 10 at 2, ¶ 3.

Simply put, at no point will this Court or any federal jury be making a determination as to whether King County's Prosecuting Attorney's Office had an *actual* conflict of interest sufficient to warrant dismissal of the State's claims against the criminal defendants, and its rulings could,

---

[6] In passing, KC Defendants claim that "the transcript of the [January 7, 2016] press conference *nowhere mentions any of the three plaintiffs by name*." Dkt. 17. at 7 (emphasis in original). Although not before the Court, to the extent KC Defendants contend that a defamer must specifically name the target to be liable for defamation, they would be incorrect. *See Mohr v. Grant*, 153 Wn.2d 812, 824, 108 P.3d 767 (2005) (recognizing defamation by implication, where defendant "create[s] a false impression in some material respect" about the plaintiff); *see also Neiman-Marcus v. Lait*, 13 F.R.D. 311, 315 (S.D.N.Y 1952) (members of a group may maintain individual actions where "[t]he words may reasonably be understood to have personal reference and application to any member of [the group], so that he is defamed as an individual").

thus, neither enjoin, nor effectively enjoin, the state court proceedings.  *See e.g.*, *Brannian v. City of San Diego*, No. 02-1726, 2003 U.S. Dist. LEXIS 26455, at *5 (S.D. Cal. Oct. 15, 2003) (finding that the threshold of interference was not met because "the state plaintiff is not rushing into federal court to try to stop the state proceedings").

The basis for Plaintiffs' federal claims is injury resulting from Defendants' malicious mischaracterizations occurring *subsequent to* Plaintiffs' arrests and alleged criminal actions.  In other words, as noted, the conduct for which Plaintiffs are / were being prosecuted in state court occurred prior to the injuries for which Plaintiffs are seeking damages here, and those injuries, including reputational and emotional harm, are not a defense to the charges below. *See, e.g., Soriano v. Town of Cicero*, No. 04-27724, 2004 WL 2966967, at *5 (N.D. Ill. Nov. 19, 2004) (finding *Younger* abstention was not appropriate, in a federal case alleging constitutional claims related to excessive force by police, as "the criminal claims deal[t] with Plaintiff's conduct before he was injured"). Much like in cases involving § 1983 allegations of excessive force in which *Younger* abstention is denied, the federal violations alleged here, although related, do not arise out of the same incident for which Mr. Emmanuel and Mr. Peters are being prosecuted in state court, nor are they a defense to the criminal charges against them. *See, e.g., Rivas v. Cal. Franchise Tax. Bd.*, 619 F. Supp. 2d 994, 1006 (E.D. Cal. 2008) (finding that *Younger* did not warrant a stay of Plaintiff's excessive force claims and "have no bearing on his state criminal proceedings," as "[h]e has not been charged with resisting arrest or any related offense" (internal citation omitted)).

Further, the third element of *Younger*, that the state proceedings provide Plaintiffs with an adequate opportunity to raise their claims, is also not met in this instance. Defendants blithely

state in their motion that Plaintiffs were able to raise "the substance of their current federal action" in their state court motion to disqualify.[7] Dkt. 17 at 12-13. That the "substance" of Plaintiffs' claims might be somehow raised in the state court proceedings, is not, however, sufficient to satisfy the *Younger* standard. *See Lebbos v. Judges of Superior Court*, 883 F.2d 810, 817 (1989) (finding that plaintiffs did not have adequate opportunity to bring their Constitutional damages claims in state proceedings, particularly where "constitutional bases [of the claims] are wholly unrelated to the constitutional basis comprising the defense of the [criminal] action").[8]

To be sure, Mr. Peters' motion to disqualify presented the issue of whether the King County Prosecuting Attorney's Office's receipt of financial grants from Demand Abolition subject to, among other things, an agreement to increase the number of arrests of buyers of sex and seek more significant punishments for them, constituted an *actual* or *direct* conflict of interest, improperly influencing the charges brought against the state court defendants, thus disqualifying the Prosecutor under the Rules of Professional Conduct and potentially constituting the type of flagrant misconduct warranting dismissal. Dkts. 18-1 at 3; 18-2 at 75.

Plaintiffs' instant Complaint, however, does not rise and fall on proving actual conflicts of interest affecting King County. Rather, it involves, at its core, Defendants' deliberate conflation of the prostitution charges brought against Plaintiffs with charges of human trafficking

---

[7] To the extent Defendants imply that the ruling on the motion to disqualify somehow serves as a bar to those issues, they would be wrong. To be clear, there was no discovery taken, no evidentiary hearing with respect to the issues raised in the state defendants' motion to disqualify, and no final judgment. The ruling on the motion to disqualify in no way works to estop the federal Plaintiffs from raising overlapping issues.

[8] The case pre-dated *Gilbertson*, but the analysis regarding the distinction between the Constitutional claims still applies.

PLAINTIFFS' OPPOSITION TO KING COUNTY-RELATED DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND STAY (C18-00377-JLR) - 14

SPIRO HARRISON
500 UNION STREET, SUITE 800
SEATTLE, WASHINGTON 98101
T 206.899.1996   F 973.232.0887

and sex slavery, in order to manipulate media coverage and to secure, or continue to secure, private funding.  Dkt. 10 at 2, ¶ 1. KC Defendants cannot credibly claim that Plaintiffs' defamation, invasion of privacy, and infliction of emotional distress claims related to Defendants' actions occurring subsequent to Plaintiffs' arrest and charging, constitute defenses to those charges and, as such, can be brought against KC Defendants in the state proceedings. Likewise, KC Defendants cannot claim that the constitutional violations alleged with respect to the statements made by Defendants subsequent to Plaintiffs' arrests and charging, also constitute a defense to the underlying charges and can be asserted by Plaintiffs in the criminal proceedings.

### VI.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the KC Defendants' Motion.

RESPECTFULLY SUBMITTED this 7th day of May 2018.

**SPIRO HARRISON**

By __/s Hozaifa Y. Cassubhai_____
    Hozaifa Y. Cassubhai, WSBA No. 39512
    500 Union Street, Suite 800
    Seattle, Washington 98101
    Phone: 206.899.1996
    Facsimile: 973.232.0887
    Email: hcassubhai@spiroharrison.com
    *Attorney for Plaintiffs*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 7, 2018, I electronically filed the foregoing document via Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

Dated this 7th day of May 2018

                                      Spiro Harrison
                                      *Attorney for Plaintiffs*

                                By   /s *Hozaifa Y. Cassubhai*
                                      Hozaifa Y. Cassubhai, WSBA #39512
                                      500 Union Street, Suite 800
                                      Seattle, Washington 98101
                                      Telephone: (206) 899-1996
                                      Fax: (973) 232-0887
                                      Email: hcassubhai@spiroharrison.com