UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEITH EMMANUEL, et al.,

Plaintiffs,

v.

KING COUNTY, et al.,

Defendants.

CASE NO. C18-0377JLR

ORDER ON MOTION TO DISMISS AND STAY

## I. INTRODUCTION

Before the court is Defendants King County; King County Prosecuting Attorney Daniel Satterberg; and former King County Sheriff John Urquhart's (collectively, "King County Defendants") motion to dismiss and stay. (MTD (Dkt. # 17).) Defendants City of Bellevue and Bellevue Police Chief Steven Mylett (collectively, "Bellevue Defendants") filed a response in support of King County Defendants' motion (Bellevue Resp. (Dkt. # 20)), and Plaintiffs Keith Emmanuel, Richard Homchick, and Charles

//

Peters (collectively, "Plaintiffs") filed a response in opposition to the motion (Pl. Resp. (Dkt. # 22).)[1] The court has considered the motion, the submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[2] the court grants in part and denies in part the motion for the reasons set forth below.

## II. BACKGROUND

This case arises from Plaintiffs' participation in "The League," an exclusive group of men who patronized sex workers. (*See* Am. Compl. ¶¶ 1, 32; MTD at 3 (citing Hackett Decl. (Dkt. # 18) ¶¶ 8-13 (attaching probable cause certifications and findings of probable cause).)[3] The League was affiliated with an online message board on which members shared their experiences with a network of sex workers. (*See* Am. Compl. ¶¶ 1, 32; MTD at 4 (citing Hackett Decl. ¶¶ 8-13.) On or about January 5, 2016, officers from the King County Sheriff's Office and Bellevue police arrested ten men after "a months-long undercover operation dubbed 'Operation No Impunity.'" (Am. Compl. ¶ 30.) Plaintiffs were among those men arrested, and they were charged with promoting

[1] The court refers to all defendants collectively as "Defendants."

[2] No party requests oral argument (*see* MTD at 1; Pl. Resp. at 1; Bellevue Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court takes judicial notice of the state court documents related to Plaintiffs' criminal charges. *See* Fed. R. Evid. 201(b); *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (stating that in ruling on a motion to dismiss, a court may take judicial notice of publicly available documents); *see also United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (stating that the court may consider documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment); (MTD at 2-8 (citing state court documents).)

prostitution in the second degree under RCW 9A.88.080(1)(b). (*Id.* ¶¶ 1, 30-31.) Mr. Homchick pleaded guilty on February 12, 2016. (Hackett Decl. ¶ 6, Ex. 5 ("Plea").) The cases against Mr. Emmanuel and Mr. Peters are ongoing. (*See, e.g.*, *id.* ¶ 4, Ex. 3; *id.* ¶ 5, Ex. 4; *id.* ¶ 18, Ex. 17.)

Two days after the arrests, Defendants "convened a joint press conference to announce the arrests." (*Id.* ¶ 33.) Plaintiffs allege that beginning with the press conference, Defendants launched "a coordinated campaign to defame and publicly humiliate Plaintiffs" by making "false and misleading statements that directly, or by implication, accused Plaintiffs of various criminal activity" with which they had not been charged— "human trafficking, sex slavery, criminal sexual abuse, kidnapping, and rape." (*See id.* ¶¶ 34-35; *see also id.* ¶¶ 1 (alleging that Defendants "deliberately conflated th[e] prostitution charge with human trafficking and sex slavery as part of a concerted plan to secure private funding and manipulate media coverage"), 16 (alleging that Defendants have waged a "false and malicious public campaign against Plaintiffs, wrongly imputing that Plaintiffs were engaged in human trafficking, sex slavery, and other crimes").) Plaintiffs specifically point to a number of statements regarding human trafficking that Sheriff Urquhart, Prosecuting Attorney Satterberg, and Chief Mylett made at the press conference. (*See id.* ¶¶ 36-40, 43-45, 49-53.)

Plaintiffs further allege that Defendants continued the human trafficking narrative in a press release issued on January 7, 2016, (*see id.* ¶¶ 56-60) and at a domestic violence symposium at Seattle University School of Law on September 7, 2017, when Detective Luke Hillman of the King County Sheriff's Office made references to human traffickers

and showed Plaintiffs' photos (*id.* ¶¶ 82-86). Plaintiffs allege that Defendants' statements regarding human trafficking were then reported by local and national media outlets and "thus re-published to millions of people across the globe." (*See id.* ¶ 64; *see also id.* ¶¶ 65, 67.) Plaintiffs further contend that the allegedly false statements extended to a probable cause affidavit King County Sheriff's Office Detective Mike Garske filed on September 9, 2016, in which Detective Garske labeled Mr. Peters a "convicted human trafficker" (*id.* ¶ 75), and when the Prosecutor's Office threatened to add sexual motivation enhancements to Plaintiffs' charges (*id.* ¶ 79). Plaintiffs specifically contend that the "enhancement threat . . . was coercive and did, in fact, coerce a guilty plea" from Mr. Homchick. (*Id.* ¶ 81; *see also* Plea.) Plaintiffs further allege that Defendants did not correct the false narratives they advanced. (*See* Am. Compl. ¶¶ 70-73.)

Plaintiffs allege that those narratives are related to private money that the King County Prosecutor's Office ("Prosecutor's Office") began receiving in 2014. Due to budget shortfalls, the Prosecutor's Office in 2014 sought private money to fund its operations. (*See id.* ¶ 17.) That search led the Prosecutor's Office to Demand Abolition, a group that seeks to end "the illegal commercial sex industry in the U.S. . . . by combating the demand for purchased sex.'" (*Id.* ¶ 19 (ellipsis in original).) In January 2014, the Prosecutor's Office—led by Senior Deputy Prosecutor Val Richey—applied for a grant from Demand Abolition. (*Id.* ¶¶ 19-20.) In its application, the Prosecutor's Office identified several strategies for reducing the demand for prostitution and committed to reducing demand by 20 percent in 24 months and increasing arrests of buyers by 50 percent. (*Id.* ¶ 21.) In April 2014, Demand Abolition awarded the

Prosecutor's Office $50,000.00, and Plaintiffs believe Demand Abolition has renewed the grant contract every year since 2014. (*Id.* ¶¶ 22, 26.) The contract contains a claw-back provision that allows Demand Abolition to receive a total or partial refund "if, in [Demand Abolition's] sole discretion, such action is necessary." (*Id.* ¶ 25.)

In addition to grant money, Plaintiffs contend that Demand Abolition has provided the Prosecutor's Office access to media consultants to help increase public awareness of King County Defendants' efforts to reduce the demand for prostitution. (*Id.* ¶¶ 27-28.) Plaintiffs allege that the Prosecutor's Office, "with the other [D]efendants marching lock-step, routinely adopted the language provided by th[o]se media consultants, knowing and/or recklessly disregarding that the resulting message would be highly misleading, and would improperly impute crimes" to Plaintiffs. (*Id.* ¶ 29.)

Plaintiffs assert that "King County and its agents have abused normal processes and placed personal and private third-party interests over Plaintiffs' rights" by "soliciting receiving, and maintaining funds" from Demand Abolition. (*Id.* ¶ 90.) Plaintiffs contend that they do not seek to litigate their criminal charges in this court but want to stop Defendants from "vilify[ing] and humiliat[ing] Plaintiffs" and characterizing their arrests for promoting prostitution as arrests for human trafficking and sex slavery. (*Id.* ¶ 3.)

Based on the foregoing allegations, Plaintiffs bring the following claims: (1) abuse of process under 42 U.S.C. § 1983 (*id.* ¶¶ 91-97); (2) violation of due process under 42 U.S.C. § 1983 (*id.* ¶¶ 98-105); (3) defamation (*id.* ¶¶ 106-115); (4) false light/invasion of privacy (*id.* ¶¶ 116-25); (5) aiding and abetting defamation (*id.* ¶¶ 126-30); (6) aiding and abetting false light/invasion of privacy (*id.* ¶¶ 131-32); (7)

intentional infliction of emotional distress (*id.* ¶¶ 135-39); and (8) negligent infliction of emotional distress (*id.* ¶¶ 140-44). They seek preliminary and permanent injunctive relief "prohibiting Defendants . . . from making false or misleading statements about Plaintiffs"; compensatory, special, and punitive damages; and attorneys' fees and costs. (*Id.* at 26 (prayer for relief).)

Defendants move to (1) dismiss Mr. Homchick's federal constitutional claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and (2) stay Mr. Emmanuel's and Mr. Peters's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), while their criminal cases proceed in state court. (*See* MTD at 9, 11.) Defendants do not challenge Plaintiffs' state law claims. (*See id.* at 2 (stating that "the federal damages lawsuit filed by [Mr.] Emmanuel and [Mr.] Peters should be stayed, while [Mr.] Homchick's federal claims should be dismissed).) The court now addresses Defendants' motion.

## III. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a plaintiff does not have to make "detailed factual allegations," a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), the court can dismiss a complaint based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

**B. Motion to Dismiss and Stay**

1. Mr. Homchick

King County Defendants argue that Mr. Homchick's claims are barred by the doctrine articulated in *Heck* because Mr. Homchick's allegations "go directly to undermining [his] criminal prosecution[]." (*See* MTD at 10; *see also id.* at 9.) Specifically, King County Defendants point to Mr. Homchick's allegation that "[t]he enhancement threat, along with misleading public statements linking the arrestees to human trafficking and other uncharged crimes, was coercive and did, in fact, coerce a guilty plea" from Mr. Homchick. (*Id.* at 11 (citing Am. Compl. ¶ 81).)

Mr. Homchick argues that his Section 1983 claims do not necessarily imply that his conviction is invalid. (*See* Pl. Resp. at 6.) Mr. Homchick focuses on the timing of the conduct he alleges led to constitutional violations. (*See id.*) He states that the events for which he was charged—and ultimately convicted—occurred between January 7, 2013,

and January 6, 2016, whereas his constitutional claims began to accrue starting on January 7, 2016—the date of the press conference. (*Id.*) Thus, Mr. Homchick argues that his claims cannot cast doubt on his conviction. (*See id.* at 6-7.)

Under *Heck*, "[w]hen a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) (quoting *Heck*, 512 U.S. at 487); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a [plaintiff] cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence."). If a judgment in the plaintiff's favor would imply invalidity, "the civil action is barred." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018). "In evaluating whether claims are barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating an element of the offense of which he has been convicted." *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (internal quotation marks omitted) (quoting *Heck*, 512 U.S. at 487 n.6).

To determine whether a judgment in Mr. Homchick's favor would cast doubt on his conviction, the court looks at the substance of the constitutional violations—abuse of process and due process—Mr. Homchick alleges. In the first instance, the court notes that the Ninth Circuit has never held that an abuse of process claim is cognizable under Section 1983. *See West v. City of Mesa*, 708 F. App'x 288, 292 (9th Cir. 2017) (concluding that "[e]ven assuming an abuse of process claim is cognizable under § 1983

in our circuit, [the plaintiff] failed to plead sufficient facts to establish the elements of such a claim"). Indeed, "[m]ost federal courts to consider whether a state actor's alleged abuse of process can give rise to a constitutional claim under § 1983 have concluded that there is no constitutional violation absent conscience-shocking egregious wrongdoing." *Brown v. Lever*, No. 2:17-cv-00828-JAD-PAL, 2018 WL 1903120, at *6 (D. Nev. Apr. 20, 2018) (citing Martin A. Schwartz, *Section 1983 Claims & Defenses*, § 3.18 Malicious Prosecution; Abuse of Civil Process (4th ed. 2018 Supp.) (collecting cases)). However, assuming that the claim is cognizable as the Ninth Circuit has assumed, *see West*, 708 F. App'x at 292, a judgment in Mr. Homchick's favor on that claim would not necessarily invalidate his conviction.[4]

The Supreme Court's discussion of the difference between a malicious prosecution claim and an abuse of process claim illustrates that point. In *Heck*, the Supreme Court noted that the "gravamen" of abuse of process "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." 512 U.S. at 486 n.5; *see also Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1024 (Wash. Ct. App. 2017) ("To establish the tort of abuse of process, a claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm proximately caused by the abuse of process."). "Cognizable injury for abuse of process is

---

[4] No party addresses whether an abuse of process claim is cognizable under Section 1983. (*See generally* MTD; Pl. Resp.; Bellevue Resp.) Nor do Defendants address the factual allegations underpinning either of Plaintiffs' constitutional claims pursuant to Section 1983. (*See generally* MTD; Bellevue Resp.) The court thus declines to do so.

limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion." *Heck*, 512 U.S. at 486 n.5. A malicious prosecution claim, on the other hand, "would permit a collateral attack on the conviction" because the plaintiff must demonstrate that the prior criminal proceeding ended in the plaintiff's favor. *See id.* at 484 (internal quotation marks omitted) (quoting 8 S. Speiser, C. Krause & A. Gans, American Law of Torts § 28:5 (1991)). Thus, succeeding on an abuse of process claim does not necessarily impugn the validity of the underlying criminal proceedings. *See Cabot v. Lewis*, 241 F. Supp. 3d 239, 260 (D. Mass. 2017). Thus, the court concludes that a judgment favorable to Mr. Homchick on an abuse of process claim would not necessarily imply an invalid conviction.

As to Mr. Homchick's due process claim, the lack of clarity regarding the theory under which he proceeds limits the court's analysis. In many instances, *Heck* will bar a plaintiff's due process claim. For example, in *Heck*, the plaintiff alleged that state officials violated his due process rights by conducting an arbitrary investigation, knowingly destroying exculpatory evidence, and using an illegal voice identification procedure at his trial. *See* 512 U.S. at 479. Those allegations cast doubt on his criminal conviction and were therefore barred. *See id.* at 490. Similarly, in *Trimble v. City of Santa Rosa*, 49 F.3d 583, 584 (9th Cir. 1995), the plaintiff alleged that his Fifth and Sixth Amendment rights were violated when state officials failed to give him a *Miranda*[5]

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warning and the court allowed hearsay and videotape evidence to be introduced at trial. The Ninth Circuit held that *Heck* barred those claims because they would cast doubt on the plaintiff's conviction. *Id.* at 585. And as a final example, the Ninth Circuit also held that a plaintiff's due process claims were barred because "a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140 (9th Cir. 2005) (quoting *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997)).

Here, although Mr. Homchick does not concretely identify how Defendants violated his right to due process, his claim is not of the same flavor as in the cases discussed above. Mr. Homchick alleges that King County Defendants deprived his "liberty or property interests protected by due process" (Am. Compl. ¶ 100) and "otherwise betrayed the principles of fundamental fairness" (*id.* ¶ 103). Elsewhere, Mr. Homchick alleges that "King County and its agents have abused normal processes and placed personal and private third-party interests over Plaintiffs' rights." (*Id.* ¶ 90.) Thus, viewing the allegations in the light most favorable to Mr. Homchick at this point in the proceedings, the court cannot say that success on Mr. Homchick's due process claim would necessarily imply the invalidity of his conviction.

In addition, the relationship between *Heck* and guilty pleas further counsels against dismissal. In *Byrd v. Phoenix Police Department*, 885 F.3d 639, 643 (9th Cir. 2018), the Ninth Circuit concluded that *Heck* did not bar the plaintiff's claims because the plaintiff's conviction resulted from a plea agreement. The plaintiff brought claims

under Section 1983 for violations of his Fourth Amendment right to be free from unreasonable search and seizure and his Fifth and Fourteenth Amendment rights to due process. *Id.* at 641. The court held that because "[n]o evidence was produced against him at his plea hearing," judgment in his favor "on his § 1983 claims would not necessarily demonstrate the invalidity of his conviction." *Id.* at 644; *see also Reese*, 888 F.3d at 1046 (concluding that *Heck* did not bar the plaintiff's claims because "nothing in the record . . . show[ed] the specific factual basis for [the plaintiff's] misdemeanor conviction," so the court could not determine whether the plaintiff's excessive force claim "would call into question the validity of his misdemeanor weapon conviction"). Similarly, Mr. Homchick pleaded guilty, and a favorable ruling on his constitutional claims would not necessarily undermine his conviction. (*See* Plea at 92-93 (stating only that Mr. Homchick "knowingly advance[d] the profession of prostitution through [his] internet activities on websites such as: thereviewboard.net, [and] kgirldelights.com[,] and through [his] email activities. These acts occurred in King County, WA[,] from Oct[ober], 2013 – Jan[uary] 2016.").)

Although *Heck* does not require dismissal, Mr. Homchick cannot proceed on any theory that "the plea was not knowing and voluntary." *See Byrd*, 885 F.3d at 643 (stating that success in the plaintiff's Section 1983 case would not affect the conviction because the plaintiff "alleged no facts . . . suggesting that the plea was not knowing and voluntary"); *cf. Cunningham*, 312 F.3d at 1154 (holding that the plaintiff's claims were barred by *Heck* to the extent they depended on a theory already litigated but were not barred to the extent they were part of the "broader theory" also alleged in the complaint).

It appears that he does not intend to do so. (*See* Pl. Resp. at 9-10 (stating that this allegation is relevant for establishing Defendants' "state of mind on the defamation and false light claims and intentional infliction of emotional distress and the claim for punitive damages under § 1983"); *see also id.* at 10 n.5.) Thus, although his constitutional claims do not appear to actually challenge his guilty plea, Mr. Homchick may not rest those claims on any alleged coercion by the threat of a sexual motivation enhancement. (*See* Am. Compl. ¶ 81.) That allegation—if proved—would cast doubt on his conviction, and therefore is barred by *Heck*. *Cf. Byrd*, 885 F.3d at 643.

For these reasons, the court concludes that a favorable judgment on Mr. Homchick's constitutional claims would not necessarily imply that his conviction is invalid. The court therefore denies Defendants' motion to dismiss the claims pursuant to *Heck*.

2. Mr. Emmanuel and Mr. Peters

King County Defendants next argue that the *Younger* abstention doctrine requires the court to stay Mr. Emmanuel's and Mr. Peters's federal constitutional claims while their state criminal cases proceed.[6] (*See* MTD at 11.)

Mr. Emmanuel and Mr. Peters argue that no rulings in this case would have the effect of enjoining the state court proceedings and that the constitutional violations they allege "do not arise out of the same incident for which [they] are being prosecuted in state

---

[6] Under *Younger*, "federal courts should not dismiss actions where damages are at issue" but instead should stay those actions "until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004).

court." (*See* Pl. Resp. at 12-13.) They also argue that the state proceedings do not provide them an adequate opportunity to raise their claims because their state law claims for defamation, invasion of privacy, and intentional and negligent infliction of emotional distress cannot be brought in the state criminal case. (*See id.* at 13-15.)

As a general rule, a federal court has a "virtually unflagging obligation" to adjudicate controversies properly before it. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, the *Younger* abstention doctrine "forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings." *Younger*, 401 U.S. at 41. "The goal of *Younger* abstention is to avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007).

Federal courts must abstain from exercising jurisdiction "under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008). The court has no discretion absent exceptions not raised here: if the four requirements are met, the court must stay the claims; if the requirements are not met, the court must go forward with the claims. *See id.*; *see also Middlesex Cty. Ethics Comm. v.*

*Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (noting bad faith, harassment, and other extraordinary circumstances as exceptions to abstention).

The parties do not dispute the first two requirements (*see* MTD at 12; Pl. Resp. at 12-14 (addressing specifically only the third and fourth requirements)), and the court concludes that they are satisfied. The criminal case against Mr. Emmanuel and Mr. Peters is ongoing, and it involves important state interests. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (stating that the second requirement is satisfied when "the State's interests in the [ongoing] proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government"); *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003) ("The importance of the [state's] interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case."). The court thus proceeds to the third and fourth requirements for *Younger* abstention.

The third requirement is met when the plaintiff may litigate his federal constitutional issues in the state proceeding. "[T]he burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [his] claims." *Pennzoil*, 481 U.S. at 14; *see also Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1019 (9th Cir. 1999) ("*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings."). The court "assumes that state procedures afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Baffert*, 332 F.3d at 619. On this point, Mr. Emmanuel and Mr. Peters make two arguments against abstention: (1) although they raised in the criminal proceedings

whether the Prosecutor's Office had an actual conflict of interest arising from King County's relationship with Demand Abolition, their constitutional claims here do "not rise and fall on proving actual conflicts of interest affecting King County" (Pl. Resp. at 14), and (2) they cannot bring their state law claims in the state criminal proceeding (*see id.* at 15). Both arguments fall short.

First, even if Mr. Emmanuel and Mr. Peters do not bring claims regarding a conflict of interest, they make no showing that the constitutional claims they do assert cannot be litigated in their state court case. Their failure to make that showing—or even provide argument on the point—is compounded by the manner in which Plaintiffs plead their constitutional violations. *See supra* § III.B.1. That is, it is unclear whether an abuse of process claim is cognizable as a constitutional violation, and the court cannot discern specifically what theory of due process violation Plaintiffs mean to allege.[7] *See id.* Accordingly, the court "assumes that state procedures afford an adequate remedy" without "unambiguous authority to the contrary." *Baffert*, 332 F.3d at 619; *cf.* Royce A. Ferguson Jr., 12 Wash. Prac., Criminal Prac. & Proc. § 2113 (3d ed.) (citing Wash. CrR 8.3(b) ("The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.")).

//

[7] Defendants did not challenge the cognizability or sufficiency of Plaintiffs' claims. (*See* MTD.) Thus, the court does not decide those issues here. *See supra* n.4.

Second, the focus here is on whether the state proceeding provides a forum for Mr. Emmanuel's and Mr. Peters's federal constitutional claims—not their state law claims. *See San Jose Silicon Valley Chamber*, 546 F.3d at 1092. The fact that they may not raise their state law tort claims in the criminal proceeding is irrelevant. Thus, the third requirement for the court's abstention is present.

The fourth requirement focuses on whether the federal lawsuit "would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose Silicon Valley Chamber*, 546 F.3d at 1092. Plaintiffs contend that the court's ruling on their claims could not have the practical effect of enjoining the state court proceeding because Plaintiffs are not seeking dismissal of their criminal charges. (Pl. Resp. at 12.) They also argue that the conduct they complain of—Defendants' references to human trafficking—occurred after King County Defendants brought the criminal charges. (*Id.* at 13.) Mr. Emmanuel and Mr. Peters view this requirement too narrowly.

Even though their claims arise from Defendants' statements after they were arrested and charged with promotion of prostitution, those statements occurred within the course of the criminal proceedings and therefore relate to those proceedings. The relief Plaintiffs request illustrates this point. Were the court to grant the relief Mr. Emmanuel and Mr. Peters request—including an injunction preventing Defendants from continuing to invoke human trafficking in connection with Plaintiffs—the court would interfere with the state proceedings "in a way that *Younger* disapproves." *See San Jose Silicon Valley Chamber*, 546 F.3d at 1092; *cf. Rodriguez v. Gore*, No. 16-cv-02947-H-MDD, 2017 WL 766893, at *2 (S.D. Cal. Feb. 28, 2017) (finding that the federal case "threaten[ed] to

interfere with the state criminal proceedings . . . by inserting federal court oversight into an ongoing state criminal proceeding”); *Escobar v. LASD Male Doe*, No. CV 17-7352-DSF (SP), 2017 WL 7050642, at *2 (C.D. Cal. Nov. 30, 2017) (“For this court to maintain a parallel case on plaintiff’s civil excessive force claim while the related state criminal case is pending would amount to interference in the state criminal case.”). In addition, substantive rulings on Mr. Emmanuel’s and Mr. Peters’s constitutional claims, which arise from events related to the criminal proceedings, would also interfere with the state criminal case. *See San Jose Silicon Valley Chamber*, 546 F.3d at 1092.

Because all four requirements for *Younger* abstention are present, the court grants Defendants’ motion and stays Mr. Emmanuel’s and Mr. Peters’s federal constitutional claims.[8]

**C. State Law Claims**

The parties do not address how the court should proceed with Plaintiffs’ state law claims in light of staying Mr. Emmanuel’s and Mr. Peters’s federal constitutional claims.[9] (*See* MTD; Pl. Resp.; Bellevue Resp.) Although not a uniform practice, several district courts have stayed related state law claims after staying federal constitutional claims

[8] For the sake of clarity, the court notes that in addition to Mr. Homchick’s federal constitutional claims, Plaintiffs’ state law claims remain pending. (*See* MTD at 2 (not challenging Plaintiffs’ state law claims).)

[9] Because the court does not dismiss the federal constitutional claims, analyzing whether to retain supplemental jurisdiction over the state law claims is inappropriate. *See* 28 U.S.C. § 1367.

pursuant to *Younger*. *See Gilbert v. N.C. State Bar*, 660 F. Supp. 2d 636, 648 (E.D.N.C. 2009) (abstaining under *Younger* and staying state law claims pending resolution of the state court proceedings); *Brandywine Estates LP v. Lucas Cty.*, No. 3:15-cv-00884, 2015 WL 5255002, at *5 (N.D. Ohio Sept. 9, 2015) (same); *Sheehan v. Cty. of Kauai*, No. 12-00195 HG-BMK, 2013 WL 1342364, at *17 (D. Haw. Mar. 29, 2013) (same). Thus, the court seeks the parties' input on a plan for resolving Mr. Emmanuel's and Mr. Peters's state law claims. Accordingly, Plaintiffs, King County Defendants, and Bellevue Defendants must each file a five-page statement no later than fourteen (14) days from the date of this order. Each statement should include the party's respective position on a plan for resolution of the state law claims and should address the relevant authority. If the parties agree on an approach and statement of the law, they may jointly file a response.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part Defendants' motion to dismiss and stay (Dkt. # 17). Specifically, the court DENIES Defendants' motion to dismiss Mr. Homchick's federal claims as barred by *Heck*, but clarifies that Mr. Homchick may not proceed with any theories of liability that cast doubt on the validity of his criminal conviction. The court GRANTS Defendants' motion to stay Mr. Emmanuel's and Mr. Peters's federal constitutional claims pending their state court criminal case. The court further ORDERS Plaintiffs, King County Defendants, and Bellevue Defendants to each file a statement of no more than five (5) pages no later than fourteen (14) days from the date of this order. Each statement should articulate a proposal for resolving the state law claims and should address the relevant authority. If

the parties agree on a proposal and statement of the law, they may file a single response subject to the same page limits and deadline.

Dated this 6th day of July, 2018.

JAMES L. ROBART
United States District Judge