1

2

3

4

5                                                          The Honorable James L. Robart

6

7                    UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

RICHARD HOMCHICK,                        )
9                                        )
                            Plaintiffs,  )   No. 2:18-cv-00377-JLR
10                                       )
              vs.                        )
11                                       )
                                         )   DEFENDANTS' MOTION FOR
KING COUNTY, a home rule charter county and  )   SUMMARY JUDGMENT
12  municipal corporation doing business as the KING  )
    COUNTY SHERIFF'S OFFICE and the KING  )   *Noted for Consideration June 26, 2020*
13  COUNTY PROSECUTING ATTORNEY'S        )
    OFFICE; JOHN URQUHART, individually and in  )   Oral Argument Requested
14  his official capacity as King County Sheriff,  )
    DANIEL SATTERBERG, individually and in his  )
15  official capacity as King County Prosecutor,  )
                                         )
16                          Defendants.  )
                                         )
17  _____

18

19

20

21

22

23

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - i

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

**TABLE OF CONTENTS**

I.  INTRODUCTION AND RELIEF REQUESTED ......................................................1

II.  EVIDENCE RELIED UPON...............................................................................1

III.  FACTS .............................................................................................................1

    A.  PROSECUTOR SATTERBERG AND SHERIFF URQUHART FOCUS
        ON ANTI-DEMAND STRATEGIES TO COMBAT SEX BUYERS.............2

    B.  HOMCHICK'S ACTIVITIES PROMOTING PROSTITUTION WITH
        KOREAN NATIONALS. ...............................................................................3

    C.  INVESTIGATION, THE PRESS CONFERENCE, AND HOMCHICK'S
        COMVICTION. ..............................................................................................4

    D.  PROCEDURAL HISTORY. ...........................................................................8

IV.  ISSUES .............................................................................................................9

V.  LEGAL ARGUMENT ........................................................................................9

    A.  PLAINTIFF'S DUE PROCESS RIGHTS WERE NOT VIOLATED. ...........9

        1.  Homchick Has No Colorable Defamation Claim..............................10

            a.  Defendant's Statements Were Not False...............................10

            b.  The Press Conference Statements Were Privileged................14

            c.  Damages ...............................................................................15

        2.  He Cannot Prove Defamation Plus, Which is Necessary for a
            §1983 Claim...................................................................................16

        3.  Defendants are Entitled to Qualified Immunity................................17

        4.  Homchick Has Demonstrated No Basis for *Monell* Liability.............17

        5.  The Court Should Dismiss Homchick's Request for Injunctive
            Relief. ...............................................................................................18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

B.   HOMCHICK HAS NO CAUSE OF ACTION UNDER § 1983 FOR
"ABUSE OF PROCESS." ............................................................................. 18

1.   Homchick's Cause of Action is Barred By Prosecutorial Immunity
and *Heck*. ........................................................................................... 18

2.   Homchick Has No § 1983 Cause of Action for Abuse of Process ........ 19

3.   Qualified Immunity Precludes Homchick's Claim. ........................... 22

4.   Homchick Has No Claim Against King County. ................................ 22

C.   HOMCHICK HAS NO VIABLE STATE LAW CAUSES OF ACTION
FOR DEFAMATION OR FALSE LIGHT INVASION OF PRIVACY,
INCLUDING AIDING AND ABETTING EITHER. .................................... 22

D.   HOMCHICK'S STATE LAW CLAIMS FOR NEGLIGENT AND
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL. ......... 24

VI.   CONCLUSION ................................................................................................... 25

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

## I.   INTRODUCTION AND RELIEF REQUESTED

2

Over the past two decades, societal responses to commercial sexual exploitation have

3

evolved from punishing prostituted persons to placing responsibility with individuals who buy sex,

4

promote prostitution, operate internet platforms and procure prostituted persons.     Both as

5

individuals and elected officials, defendants Prosecutor Dan Satterberg ("Prosecutor Satterberg")

6

and former Sheriff John Urquhart ("Sheriff Urquhart") have a First Amendment *right* to advocate

7

against criminal behavior that promotes and facilitates the trafficking of prostituted persons for

8

commercial sex buyers.  Because Homchick's requested relief – including damages and a prior

9

restraint on future speech – are repugnant to the First Amendment, the court should grant summary

10

judgment to defendants Prosecutor Satterberg, Sheriff Urquhart and King County.

11

## II.   EVIDENCE RELIED UPON

12

Declaration of Amy Montgomery.

13

Declaration of Dan Clark.

14

## III.   FACTS

15

The operative facts of this motion rely on admissions by Homchick, including his

16

stipulation that "facts set out in the certification[] of probable cause and prosecutor's summary"

17

are "real and material facts" for sentencing.  *Declaration of Amy Montgomery, Ex. A at 1* (Felony

18

Plea Agreement).  By this stipulation, Homchick "acknowledge[d] and waive[d] any right to have

19

a jury determine these facts by proof beyond a reasonable doubt."  *Id.*  This factual stipulation is

20

binding on summary judgment.  *See In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (Plea

21

stipulation "conclusively establishes" facts in subsequent federal litigation).

22

23

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

## A. PROSECUTOR SATTERBERG AND SHERIFF URQUHART FOCUS ON ANTI-DEMAND STRATEGIES TO COMBAT SEX BUYERS.

This case takes place within the larger public policy debate between those who would legalize prostitution and those who see prostitution as an inherently exploitive criminal enterprise that harms prostituted persons and others. *See generally Julie Dahlstrom*, The Elastic Meaning(s) of Human Trafficking, 108 Calif. L. Rev. 379 (2020) (Explaining ongoing debate regarding activities of sex buyers and meaning of "trafficking" definition.)("Dahlstrom"). Beginning in 2012, Prosecutor Satterberg directed his criminal division to explore effective anti-demand strategies like the "Nordic Model" to address the widespread problem of commercial sexual exploitation. *Declaration of Daniel Clark,* ¶ 5. Research showed that efforts to combat prostitution were effective when focused on the demand side (*i.e.*, those individuals who buy sex). *Id.* at ¶ 6. Data suggested upwards of 100,000 sex buyers in King County, but only about 196 were charged each year for buying sex from adults or children. *Id.* at ¶ 7.

In 2013, working with other law enforcement agencies, Prosecutor Satterberg began to implement an anti-demand strategy. *Id.* at ¶ 6. To supplement those efforts, in early 2014, the King County Prosecuting Attorney's Office ("KCPAO") was awarded a small, $50,000 grant from Demand Abolition, which shared an interest in anti-demand strategies.[1] *Id.* at ¶ 9. Due to the enormity of commercial sexual exploitation, KCPAO and its partners also focused on public information and education strategies to help shift cultural norms and effectively inform potential buyers of the both the risks and impacts of their activities. *Id.* at ¶ 7. The overall strategy was

---

[1] Over the course of 4.5 years, Demand Abolition awarded a total of $205,001 to KCPAO. *Clark Decl.* ¶ 10. Although helpful, these grants were *de minimis* to KCPAO's overall budget. *Id.* KCPAO serves one of the largest prosecution jurisdictions in the country with a current annual budget of almost $82 million. *Id at* ¶ 4. It employs approximately 523 persons, including 175 attorneys in the criminal division. *Id. at* ¶ 3.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

successful, with over 1.67 million buyer disruptions between November 2014 and April 2016, including 334 prosecutions. *Id.* at ¶ 8.

## B. HOMCHICK'S ACTIVITIES PROMOTING PROSTITUTION WITH KOREAN NATIONALS.

Homchick began buying sex in 2010. *Montgomery Decl., Ex. C*, Dep. 52:17-25 ("Dep."). By 2014, he was frequenting prostituted persons about twice a month which escalated to once a week by his arrest in 2016. Dep. 53:15-16. Over this period, he saw 30-40 different prostituted persons who were typically Korean nationals. Dep. 100: 24- 101:2. Homchick acknowledged that these women are typically "foreign nationals who are *trafficked* from major city to major city so that there are always new workers . . . to meet the ever-growing on-line demand for commercial sex." *Montgomery Decl. Ex. B at 1* (Certification of Probable Cause ("Certification" or "Cert."))(emphasis added).

In order to encourage others to buy sex from these Korean nationals, Homchick wrote and posted detailed reviews under the pen name of "Spider Rico." Dep. 101:23 – 103:7; *Montgomery Decl. Ex. D* (Sampling of reviews). A primary site where he posted reviews was The Review Board ("TRB"), which "allows buyers of sex to share information about how to access specific prostituted persons and to review their sexual encounters with the prostituted people." *Montgomery Decl. Ex. B at 2*. Similar to lawful e-commerce websites like Amazon, Ebay, VRBO and Yelp, positive reviews drive up business for the "prostituted persons who are reviewed." *Id.* Homchick explained that TRB was "a marketplace based upon transactions for sex exchanging" that would "connect[] users with providers." *Montgomery Decl. Ex. E,* 8: 20-24. (Homchick Proffer Transcript ("Proffer")). He purposely wrote reviews on prostituted persons who "needed a review" in order to help them "stay busy" and make a "revenue stream." Proffer at 12: 20-25. Such reviews were "intended to expand the market for prostitution in the Pacific Northwest,

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

increase the business of local brothels, and increase the volume of foreign women brought to the region." *Montgomery Decl. Ex. B at 12* ("Prosecutor's Summary").

As a result of his review board activities, Homchick was invited to become "a member of an exclusive group of men dedicated to the commercial sexual exploitation of women, particularly foreign women brought into . . . the United States for prostitution purposes;" he accepted.  Proffer at 22:20-22.  Known as the League of Extraordinary Gentlemen (the "League), this group worked in concert to promote and facilitate prostitution through websites like TRB.  *Montgomery Decl. Ex. B at 3.*  Members of The League also operated two additional websites, *www.theloeg.net* (internal) and *www.kgirlsdelights.com* (public).  Homchick helped with the development of the *kgirldelights* website by uploading pictures of the prostituted persons to make it more effective. *Montgomery Decl. Ex. B. at 4*; *Exhibit C.* Dep. at 109: 1-16.  He was involved in maintaining profiles on the site for the Northwest, Los Angeles and San Francisco regions.  Proffer at *54: 15 - 55:17.*  He also continued to post his own reviews, gaining a measure of credibility within the overall criminal enterprise.  Dep. at 110: 14-23 ("SpiderRico was known"); Proffer at 11:22-17:7. With Homchick's assistance, the League's activities "directly expanded and increased the market for exploited women in the region"  and "contributed to [a] national network of commercial sexual exploitation."  *Montgomery Decl. Ex. B at 13.*

## C.   INVESTIGATION, THE PRESS CONFERENCE, AND HOMCHICK'S COMVICTION.

Homchick's criminal behavior was uncovered through a joint investigation by the King County Sheriff's Office ("KCSO") and the Bellevue Police Department ("BPD") into the League's activities. *Montgomery Decl. Ex. B. at 1.*  On January 7, 2016, following the conclusion of the investigation, Prosecutor Satterberg, Sheriff Urquhart and Bellevue Police Chief Mylett held a press conference to announce the arrests and explain the investigation. *Montgomery Decl. Ex. F.*

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  (transcript of press conference ("Press Conf.")).  The arrests included both members of the League

2  and operators of brothels.  Homchick's name was never mentioned in the press conference.  *Id.*

3  With regard to the arrested League members and brothel owners, Sheriff Urquhart stated

4  his opinion that it was "a prostitution case . . . a human trafficking case is a better way to put it."

5  *Press Conf. 3:15-16.*  He explained how the internet and TRB were used to support a sophisticated

6  criminal enterprise.  *Id., Press Conf. 4:2 – 5:2.*  The end result of that enterprise was brothels set

7  up for Korean nationals "who were trafficked up and down the West Coast to other similar

8  situations."  *Press Conf. 6:12-14.*  He explained how the prostituted persons were brought to the

9  United States, their grim circumstances, and how they fall victim to other crimes.  *Press Conf.*

10  *5:20-7:10.*  He "wanted to send a message to the men in the Seattle area that want to think about

11  starting a web site like this" that they are "committing the crime of promoting prostitution in the

12  second degree;" such men were "facilitating prostitution."  *Press Conf. 7:11-18.*  He closed:

13  "These women were trafficked.  They were true victims.  And this type of crime cannot continue

14  in our area."  *Press Conf. 9:11-13.*

15  Chief Mylett continued by explaining the nuts and bolts of the operation.  He named a

16  specific member of the League, Donald Mueller, who was operating an apartment brothel "for the

17  purposes of trafficking for sexual purposes."  *Press Conf. 12:5-10.*  He was assisted by another

18  man named Michael Durnal.  *Press Conf. 12:15-18.*  Mueller and Durnal were both referred for

19  charges of Promoting Prostitution, Money Laundering, and Criminal Trafficking.[2]  Montgomery

20  Decl. Ex. G.  Chief Mylett pointed out the recent murder of a prostituted person in his jurisdiction.

21  *Press Conf. 17:3-21.*

22

23

[2] Their initial charge was for Second Degree Promoting Prostitution.  They plead guilty to an amended information that included multiple counts of promoting.  *Clark Decl. at* ¶ 13-14.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   Prosecutor Satterberg announced that January was "National Human Trafficking

2   Awareness month" and expressed his opinion that "[t]his is what human trafficking looks like."

3   *Press Conf. 18:24 – 19:1.* He pointed out that human trafficking and sexual slavery were not just

4   problems in other places of the world, but that the "systematic importation of vulnerable young

5   women for sexual abuse, exploitation and criminal profiteering" happens in our area. *Press Conf.*

6   *19:1-12.* He detailed the *allegations* facing the members of the League, pointing out that they

7   promoted prostitution "with the knowledge that the more business they could create for the pimps

8   and the brothels, that the more woman would come from Korea as part of this network." *Press*

9   *Conf. 20:5-12.* Prosecutor Satterberg noted that "we don't know all of the personal stories of" the

10  prostituted women, but at least one woman "was forced into prostitution in the United States to

11  pay off a family debt in South Korea." *Press Conf. 21:13-19.* Absent the demand created by the

12  League, "there would be no market here for trafficking these young women." *Press Conf. 23:10-*

13  *13*

14  In answering questions from the press, Prosecutor Satterberg emphasized that the

15  investigation focused on the TRB and the League, who "devote[d] every waking hour of their time

16  to promoting prostitution." *Press Conf. 26:1-5.* He rejected the notion that websites like TRB

17  were helping prostituted persons because such sites were creating demand supplied by "a sinister

18  criminal pipeline" where women were ultimately "trafficked . . . abused and commercially raped

19  by men here in King County." *Press Conf. 39:4-11.* Both Prosecutor Satterberg and Sheriff

20  Urquhart explained their policy to focus on the demand side of prostitution activities. *Press Conf.*

21  *40:18-20, 41:18 – 42:3.*

22  Some information was clarified in response to questions. First, Chief Mylett pointed out

23  that he had no current link between the murder in his jurisdiction and the League. *Press Conf.*

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

*37:15-18*.  Second, Prosecutor Satterberg explained that the persons bringing women in from Korea were "not necessarily local" and that others on the West Coast "are more involved in the actual receipt of women who are forced by their criminal counterparts in Korea to be part of this thing."  *Press Conf. 39:19-23*.  Finally, Sheriff Urquhart was asked whether the League was directly involved in bringing prostituted persons over from Korea.  He clarified that the League "was involved *once they got here* in promoting them." *Press Conf. 42:20-22*  (emphasis added).  He knew of no link between the groups that imported prostituted persons and the League except the women themselves.  *Press Conf. 47:2-5*.

In conjunction with the press conference, KCPAO issued a press release.  *Clark Decl. Ex. B*.  It does not mention of Homchick.  Like the press conference, the press release pointed out the role of League members in "advancing and promoting of prostituted persons in the King County area, as well as the broader U.S. Market."  *Id.* at 2.  It pointed out that the investigation "also focused on brothel owners, who established a pipeline of foreign women to the Pacific Northwest to meet the burgeoning demand for prostitution fostered by TRB and the League."  *Id.*  The press conference also included a handout detailing the investigation, known as "Operation No Impunity."  *Montgomery Decl. at Ex. L*.  The handout includes a sample review authored by Homchick.  Copies of charging papers were also available through the press conference.  Clark Decl. at ¶ 11.

Homchick was charged by information with one count of Promoting Prostitution in the Second Degree.  *Montgomery Decl. Ex. H* (Information).  On February 12, 2016, he pled guilty by straight plea to the charged crime, admitting that he "did knowingly advance the profession of prostitution through my internet activities on websites such as: thereviewboard.net, kgirldelights.com and through my email activities."  *Montgomery Decl. Ex. I at 13-14* (Statement

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  of Offender on Plea of Guilty).  He was ultimately sentenced based on the stipulated facts to zero

2  days in custody, 120 hours of community service, a class and standard assessments.  *Montgomery*

3  *Decl. Ex. J* (Judgment and Sentence).

4  **D.    PROCEDURAL HISTORY.**

5          On March 12, 2018, Homchick and two other League members (Keith Emmanuel and

6  Charles Peters) filed this federal suit against King County, Sheriff Urquhart (in his personal and

7  official capacity), Prosecutor Satterberg (in his personal and official capacity), the City of

8  Bellevue, and Chief Mylett (in his personal and official capacity).  Dkt. 1.  In his Second Amended

9  Complaint ("SAC"), Homchick raises claims under 42 U.S.C. §1983 for due process" and "abuse

10  of process" along with various state law claims related to defamation.  Dkt. 58.  The gist of the

11  SAC is a defamation lawsuit, claiming that defendants "attributed to Plaintiff criminal activity

12  concerning human trafficking and sex slavery that plaintiff did not perform, has not credibly

13  alleged to have performed, and with which he was not charged."  SAC at ¶ 1.  It also faults

14  defendants for accepting grants from Demand Abolition to assist with their anti-demand strategies.

15  SAC 13-33.

16          Early in the case, defendants filed a CR 12(b)(6) motion asking for dismissal of

17  Homchick's case under *Heck v. Humphrey*, 512 U.S. 477 (1994), which this court denied because

18  Homchick's causes of action might not implicate his underlying conviction.  Dkt. 25.  The court

19  noted the uncertainty of Plaintiff's § 1983 claims.  *See* Dkt. 25 at 8 ("[T]he Ninth Circuit has never

20  held that an abuse of process claim is cognizable under Section 1983."); *Id.* at 10 (Noting "the lack

21  of clarity" surrounding Homchick's due process claim.). This court also cautioned that "Homchick

22  cannot proceed on any theory that 'the plea was not knowing and voluntary.'"  Dkt. 25 at 12.

23          On November 15, 2018, the claims of Plaintiffs Emmanuel and Peters were dismissed

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

following a voluntary nonsuit under FRCP 41(a)(1).  Dkt. 36.  Without any settlement, Homchick

later stipulated to dismiss all claims against Bellevue and Chief Mylett with prejudice, which this

court granted.  Dkt. 43.

## IV.   ISSUES

A.     Does the speech of Prosecutor Satterberg or Sheriff Urquhart at the January 2016

press conference establish a § 1983 action for violation of Homchick's due process rights?  No.

B.     Do the actions of KCPAO in prosecuting Homchick for Promoting Prostitution 2

establish a § 1983 action for abuse of process?  No.

C.     Does Homchick have a viable state-law cause of action against King County,

Prosecutor Satterberg or Sheriff Urquhart?  No.

## V.   LEGAL ARGUMENT

On issues where the nonmoving plaintiff bears the burden of proof at trial, a defendant

moving for summary judgment "can prevail merely by pointing out to the district court that there

is an absence of evidence to support the non-moving party's case."  *Anderson v. City of Bellevue*,

862 F. Supp. 2d 1095, 1100 (W.D. Wash. 2012).  Once defendants meet this initial burden, plaintiff

"must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat

the motion."  *Id.*  Particularly with a state-law defamation and false light claims, a plaintiff "must

establish a prima facie case by evidence of convincing clarity."  *Seaquist v. Caldier*, 8 Wn.App.2d

556, 565, 438 P.3d 606 (Wash. Ct. App. 2019).

## A.   PLAINTIFF'S DUE PROCESS RIGHTS WERE NOT VIOLATED.

Homchick's due process theory under §1983  revolves around defamation.  SAC ¶ 151.

He complains of defendant's alleged "fabrication of a human trafficking and sex slavery narrative

. . . and their perpetuation of that false narrative."  *Id.* at ¶ 154.  Homchick's claims are frivolous

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

and judgment should be entered against him.

**1.    Homchick Has No Colorable Defamation Claim.**

To establish a claim for defamation under Section 1983, Homchick must first establish defamation under state law. *See Crowe v. County of San Diego,* 242 F.Supp.2d 740, 746 (S.D. Cal. 2003).   Under Washington law, defamation requires (1) falsity, (2) an unprivileged communication, (3) fault, and (4) that the communication proximately caused damages. *Mark v. Seattle Times*, 635 P.2d 1081, 1089 (Wash. 1981).   A plaintiff must establish each element "by evidence of convincing clarity." *Mark*, 635 P.2d at 1089.   Homchick cannot prevail under these elements.

**a.    Defendant's Statements Were Not False.**

When determining whether a statement is false, "a court considers it as a whole and construes it by its ordinary meaning." *Seaquist*, 8 Wn.App.2d at 566.   The alleged defamatory statement "must be a statement of fact, not a statement of opinion." *Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 330–31, 364 P.3d 129, 135 (2015).   Importantly,

> A defendant is not required to prove the literal truth of every claimed defamatory statement. *Mohr [v. Grant]*, 153 Wash.2d [812,] 825, 108 P.3d 768 [(2005)]. The gist of the story or the portion carrying the "sting" must be substantially true. *Mohr*, 153 Wash.2d at 825, 108 P.3d 768. When a defendant makes a mixture of true and false statements, "a false statement (or statements) affects the 'sting' of a report only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Mohr*, 153 Wash.2d at 826, 108 P.3d 768.

*Seaquist*, 8 Wn.App.2d at 567.   Although the elements of defamation are determined by state law, the "First Amendment shields 'statements of opinion on matters of public concern that do not contain or imply a provable factual assertion.'" *Lieberman v. Fieger*, 338 F.3d 1076, 1079 (9th Cir. 2003) (*quoting Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir.1995)).

**Homchick was never accused of the Washington criminal offense of Trafficking in**

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    **violation of RCW 9A.40.100 ("Criminal Trafficking").**  Homchick cannot present "evidence of

2    convincing clarity" to support his unreasonable and overly sensitive belief that Prosecutor

3    Satterberg and Sheriff Urquhart accused him of personally committing Criminal Trafficking.  In

4    order to establish a prima facie case of defamation, Homchick faces a substantial burden to prove

5    that the challenged speech is "of and concerning" him.  *Three Amigos SJL Rest., Inc. v. CBS News*

6    *Inc.*, 28 N.Y.3d 82, 86–87, 65 N.E.3d 35, 37, 42 N.Y.S.3d 64, 66 (2016).  The "of and concerning"

7    inquiry is a question of law.  *Id.*

8           Here, Homchick fails to meet this burden because his name is never mentioned in the press

9    conference or press release.  In fact, no one is accused of Criminal Trafficking because the term

10   "trafficking" is used in its general sense, rather than in reference to the Criminal Trafficking

11   statute, which is never cited in the press conference.  The gist of the press conference was to explain

12   how promotion of prostitution and buyers of sex are part of the overall trafficking cycle.  Such

13   individuals create demand for purchasing sex from Korean nationals, who are then brought to the

14   United States to satisfy this demand.  As Prosecutor Satterberg explained, "[t]his is what

15   trafficking looks like."  Rather than accusing League members of Criminal Trafficking, it was

16   pointed out on three separate occasions that League members had no contact with criminal

17   elements who were bringing prostituted persons into the United States.  Indeed, Homchick's

18   charging papers, which were available to the press, unambiguously demonstrated that his charges

19   were exclusively for Promoting Prostitution in the Second Degree, not Criminal Trafficking.[3]

20           **The meaning of "trafficking" is open to debate.**  Contrary to Homchick's claim that

21

22

23   _____

[3] Even if portions of the press conference are somehow taken as accusations of Criminal Trafficking, a distinction was made between ordinary League members like Homchick and others like Mueller and Duran (both specifically named at the press conference) who were brothel operators that had been referred for Criminal Trafficking charges.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

references at the press conference necessarily implied Criminal Trafficking, the term "trafficking" carries a far broader meaning than criminal activities involving force, fraud or coercion.  When a word has multiple meanings, "resolving any ambiguity in favor of a disparaging connotation is not justified."  *Exner v. Am. Med. Ass'n*, 12 Wn. App. 215, 217–18, 529 P.2d 863, 866 (1974).  Defamation must be "provably false,"  but that is not possible here because "there remains a lack of consensus on the exact contours of the legal definition [of trafficking]."  Dahlstrom at 389.  There is little consensus surrounding this public debate:

> Despite sharing key features, the resulting international, federal, and state definitions of human trafficking vary considerably. *Such divergence reflects differences in local political will and ideology. In each context, the definition is not static. Rather, human trafficking law continues to evolve through legislation, judicial interpretation, rhetoric, and government policy.* As a result, despite considerable achievements in the anti-trafficking field, *there are no definitive outer boundaries, leaving judges, prosecutors, legislators, and litigators to continue to test and push the contours of trafficking as a rhetorical term, as a basis for civil liability, and as a crime.*

*Id.* at 391 (emphasis added; footnotes omitted).  In essence, within this larger policy debate, Prosecutor Satterberg and Sheriff Urquhart were stating their *opinions* on how the League's operations contributed to trafficking.  Homchick's case cannot proceed consistent with the First Amendment because the lack of an agreed upon meaning to "trafficking" prevents "a provably false factual connotation." *Crowe*, 608 F.3d at 443.  He cannot, consistent with *Exner*, assume the most derogatory meaning possible.  *See also U.S. Mission Corp. v. Kiro TV*, 172 Wn. App. 767, 772, 292 P.3d 137, 141 (2013) (In defamation action, ambiguous language cannot be construed toward a derogatory meaning.).

      **Homchick cannot dispute that his behaviors constitute "trafficking."**  First, under 22 U.S.C. §7102 (12), the term "'sex trafficking' means the recruitment, harboring, transportation, provision, obtaining, *patronizing, or soliciting* of a person for the purpose of a commercial sex act." (Emphasis added).  A "commercial sex act" is "any sex act on account of which anything

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

of value is given to or received by any person."  Homchick, who freely admits to regularly buying sex and promoting sex buying by others, has thus engaged in "sex trafficking" under this definition.[4]  *See also* Seattle Mun. Code §12A.09.020 ("'Sexual exploitation' means the crime of patronizing a prostitute. . . ..").  He cannot claim defamation regarding trafficking activities that he freely admits.  *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005) (no defamation absent a false statement).

Second, Homchick's claim that he has not engaged in "trafficking" is also contrary to the stipulation that he entered to the facts in the Certification and Prosecutor's summary.  *See Palmer v. Schuette*, 768 Fed. Appx. 422, 427 (6th Cir. 2019) (No cause of action when "disputed press release did not differ to any great extent from the factual statement contained in the misdemeanor complaint," which plaintiff had accepted with his guilty plea).  These facts include the admission that he "is a member of an exclusive group of men dedicated to the commercial sexual exploitation of women, particularly foreign women brought into the United States for prostitution purposes."  Prosecutor's Summary at 1.  His actions were part of a sophisticated criminal enterprise centered around "trafficking" and "human trafficking," involving foreign nationals who were "trafficked from major city to major city" for sexual exploitation.  Certification at 1.  Homchick's stipulation to the fact of his involvement in trafficking binds him in these summary judgment proceedings and precludes his defamation claim.  *Wingate v. City of Seattle*, 198 F. Supp. 3d 1221, 1226 (W.D. Wash. 2016) (party cannot challenge stipulation made during course of prosecution); *Tooley v. Uttecht*, 582 Fed. Appx. 761, 762 (9th Cir. 2014) (Plea agreement results in stipulated facts).

---

[4] The general definition of "sex trafficking" is distinct from the definition of "severe forms of trafficking in persons," which refers to federal trafficking crimes.  22 U.S.C. § 7102(11).

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

### b.      The Press Conference Statements Were Privileged

Even if the contents of the press conference are incorrectly construed as defamatory, Homchick's defamation claim fails because the communication is privileged.  In particular, the First Amendment protects an individual's right to express an opinion, or "fairly comment," on a matter of public interest. *Dunlap v. Wayne*, 105 Wash.2d 529, 537, 716 P.2d 842 (1986).  Public officials have the same free speech rights as any other person.  *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (retaliation case).  Several privileges preclude Homchick's defamation claims.

**Fair Report Privilege.**  Washington follows the "fair report privilege," which applies when "(1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgement."   *McNamara v. Koehler*, 5 Wn.App.2d 708, 715, 429 P.3d 6 (2018), *review denied,* 192 Wn.2d 1021 (2019).  Here, Homchick's trafficking claims come out of a criminal filing and associated press conference.  The fair report privilege applies because statements regarding trafficking at the press conference are substantially the same as those in the filed certification and prosecutor summary.  *Id.*  Because the press conference reports what was already on file with the court, there is an absolute privilege and Homchick's defamation claim must be dismissed.

**Law enforcement privilege.**  Law enforcement agencies like KCPAO and KCSO have "a qualified privilege when releasing information to the public."  *Cassette v. King County*, 625 F.Supp.2d 1084, 1090 (W.D. Wash., 2008).  As such, for Homchick to succeed on his defamation claims, he must show that the law enforcement officer "abused that qualified privilege 'by making a statement knowing it to be false or with reckless disregard as to its truthfulness.'"  *Id.* (quoting *Turngren v. King County,* 104 Wash.2d 293, 309, 705 P.2d 258 (1985).  Homchick cannot meet this standard especially due to his stipulation and ambiguities regarding the meaning of trafficking.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   *See Cassette*, 625 F. Supp. 2d at 1091  (Law enforcement privilege precluded defamation claim

2   for press release where officers has "reasonable grounds to believe the truth of the statement it

3   made."); *Tensley v. City of Spokane,* 267 Fed.Appx. 558, 560 -561 (9th Cir. 2008) (negligent

4   dissemination of information does not defeat privilege).

5               **c.      Damages**

6        A  fundamental  problem  with  Homchick's  case  is  that  he  cannot  distinguish  between

7   damages caused by his criminal conviction and damages caused by the imagined defamation. A

8   plaintiff has the burden to show "that the false statements caused harm distinct from the harm

9   caused by the true portions of a communication." *Mohr*, 153 Wn.2d at 825–26.  Homchick cannot

10  proceed on defamation because he can provide "no evidence that the inaccurate statements caused

11  him any further damage than has resulted from the conviction and sentence," namely that the

12  alleged defamation "materially add[ed] to the damage suffered . . . by reason of the truthful

13  publication of matters relating to [his] charge and conviction" for Promoting Prostitution 2. *Mark,*

14  96 Wash.2d at 496, 635 P.2d 1081.

15       Homchick has avoided discovery on damages by asserting his reliance on "presumed"

16  damages under defamation per se.  But because the press conference involved matters of public

17  concern, Homchick may not be awarded presumed damages absent proof of actual malice.  *Maison*

18  *de France, Ltd. v. Mais Oui!, Inc.,* 126 Wash.App. 34, 54, 108 P.3d 787, 798 (2005).  Moreover,

19  Homchick's voluntary actions – posting public reviews on the internet of prostituted persons and

20  joining the notorious League – make him a limited public figure in this area.  *See Exner*, 12

21  Wn.App. at 221 (Persons who "voluntarily expose themselves to the limelight . . . may become

22  public figures.").   As a result, Homchick must show actual malice by clear and convincing

23  evidence, which he cannot do.  *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    (9th Cir. 2016) (actual malice standard).

2        **2.    He Cannot Prove Defamation Plus, Which is Necessary for a §1983 Claim**

3        Even if Homchick somehow had a valid state law defamation claim, he has no cause of

4    action under §1983 because he has no damages to a protected liberty or property interest.  A

5    defamation claim, by itself, is insufficient to support a § 1983 claim.  *See Rutledge v. Arizona Bd.*

6    *of Regents,* 660 F.2d 1345, 1353 (9th Cir.1981) (allegations of harassment, embarrassment, and

7    defamation fail to state a claim cognizable under 42 U.S.C. Section 1983).  In *Paul v. Davis,* 424

8    U.S. 693, 713 (1976), two police chiefs published a flyer to local businesses disclosing the

9    identities of "active shoplifters."  Plaintiff Davis, who had been arrested once but not adjudicated

10   guilty, claimed that the flyer "would inhibit him from entering business establishments for fear of

11   being suspected of shoplifting and possibly apprehended, and would seriously impair his future

12   employment opportunities."  *Id.* at 697.  The Court rejected the notion of any "constitutional

13   doctrine converting every defamation by a public official into a deprivation of liberty within the

14   meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Id.* at 702.  Thus,

15   "petitioners' defamatory publications, however seriously they may have harmed respondent's

16   reputation, did not deprive him of any "liberty" or "property" interests protected by the Due

17   Process Clause.  *Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 1166, 47 L. Ed. 2d 405 (1976).

18        Moreover, apart from lacking damage to a protected liberty or property interest,

19   Homchick's § 1983 action faces an additional barrier.  A plaintiff bringing a §1983 lawsuit must

20   demonstrate compensable injury that "does *not* encompass the 'injury' of being convicted and

21   imprisoned (until his conviction has been overturned)."  *Heck v. Humphrey*, 512 U.S. 477, 487

22   n.7, 114 S. Ct. 2364, 2373, 129 L. Ed. 2d 383 (1994).  Absent provable damages separate and apart

23   from his lawful conviction for Promoting Prostitution 2, Homchick has no valid §1983 action.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

*Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995).

      **3.**     **Defendants are Entitled to Qualified Immunity.**

    Qualified immunity "represents the norm" for government officials exercising discretionary authority. *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir.2012).  Apart from the lack of any constitutional violation, Prosecutor Satterberg and Sheriff Urquhart are entitled to qualified immunity because Homchick has no clearly established right for his criminal actions and the investigation surrounding those actions not to be discussed at a press conference.  For purposes of qualified immunity, "the decision in *Paul* made it difficult for the objectively reasonable public official to anticipate if and when a disclosure would implicate a constitutional right, particularly since it apparently precludes use of a bright-line test based solely on whether disclosure will cause public humiliation." *Borucki v. Ryan*, 827 F.2d 836, 843 (1st Cir. 1987).  Liability under § 1983 for defamation is appropriately rare. *See Kleiss v. Short*, 805 F. Supp. 726, 728 (S.D. Iowa 1992), *aff'd,* 995 F.2d 229 (8th Cir. 1992) (Claim brought under § 1983 alleging that news release was overly broad and unsupported by fact dismissed as frivolous.); *Ferrante v. Cty. of Monmouth*, 2016 WL 6246777 (D.N.J. Oct. 25, 2016) (No §1983 claim for Plaintiff's inclusion in "faces of heroin" pamphlet because there is no right to be free from criminal accusations.).

      **4.**     **Homchick Has Demonstrated No Basis for *Monell* Liability**

    A municipality is liable under § 1983 only if there is a "policy" or "custom" that causes the plaintiff's injury. *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 403 (1997).  A plaintiff asserting a § 1983 claim based on a municipal custom or policy must show that the custom or policy was the "'moving force' behind the constitutional violation he [or she] suffered." *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir.2007).  The press conference was the individual act of two elected officials.  There is no basis for holding King

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

County separately liable under *Monell*.

### 5.     The Court Should Dismiss Homchick's Request for Injunctive Relief.

In his SAC at page 43, Homchick seeks injunctive relief prohibiting defendants or their agents from "making false or misleading statements concerning Plaintiff related to Operation No Impunity."  The requested injunction against future speech plainly violates the First Amendment and is nothing more than a request for an unconstitutional prior restraint.  *E.g. Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) ("[A]bsent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases.").

## B.     HOMCHICK HAS NO CAUSE OF ACTION UNDER § 1983 FOR "ABUSE OF PROCESS."

Homchick's abuse of process action targets his prosecution.  The SAC alleges behaviors by KCPAO "after issuance of process against those arrested as part of Operation No Impunity" where there was a "campaign to needlessly increase publicity of arrestees" and "conflate" Homchick's criminal actions in violation of KCPAO policy and ethics rules.  *Id.* at ¶ 162.  Specifically, Homchick alleges a misuse of charging documents for ulterior purposes like generating publicity and meeting "goals" of the Demand Abolition contract.  *Id.* at ¶ 163.

### 1.     Homchick's Cause of Action is Barred By Prosecutorial Immunity and *Heck*.

Although termed "abuse of process," many of Homchick's allegations are merely a re-framed effort to bring a malicious prosecution claim.  A prosecutor is absolutely immune "from liability under § 1983 for his conduct in 'pursuing a criminal prosecution' insofar as he acts within his role as an 'advocate for the State' and his actions are 'intimately associated with the judicial phase of the criminal process.'"  *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009)(quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976)).  Allegations of undue influence and ethics

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

violations are properly addressed to the state criminal court, where "the judicial process is available

as a check on prosecutorial actions," which "reduces the need for private suits for damages to keep

prosecutors in line."  *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012)(rehearing en

banc).  Here, any allegation made by Homchick questioning the prosecution of his case, including

claims that the decision to prosecute him were motivated by outside forces or that the drafting of

charging documents was improper, are barred by absolute prosecutorial immunity.

Homchick's back-door challenge to his criminal conviction, including recovering any

damages related to that conviction, are barred by *Heck*.  This court has already cautioned

Homchick that he may not pursue claims that would necessarily imply that his conviction is

unlawful.  Dkt. 25 at 12.  But the *Heck* bar also precludes Homchick from pursuing damages under

§ 1983 that are related, in any way, to his lawful conviction.  *Trimble*, 49 F.3d at 585.  Even if

Homchick's allegations were true, it is difficult to imagine any constitutionally significant

damages between his lawful conviction for promoting prostitution with Korean nationals, and the

mention of trafficking at the press conference.

### 2.    Homchick Has No § 1983 Cause of Action for Abuse of Process

Whatever remains of Homchick's abuse of process claim following application of

prosecutorial immunity and the *Heck* bar is not cognizable under § 1983. First, the court should

decline to federalize Washington's tort of abuse of process.  *See Brown v. Lever*,

217CV00828JADPAL, 2018 WL 1903120, at *6 (D. Nev. Apr. 20, 2018) ("Most federal courts to

consider whether a state actor's alleged abuse of process can give rise to a constitutional claim

under § 1983 have concluded that there is no constitutional violation absent conscience-shocking

egregious wrongdoing.")  The Due Process Clause is not "a font of tort law to be superimposed

upon whatever systems may already be administered by the States." *Katz-Crank v. Haskett*, 843

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

F.3d 641, 649–50 (7th Cir. 2016) (*quoting Paul*, 424 U.S. at 701).  At the very least, as with a

defamation plus claim under § 1983, Homchick must demonstrate a constitutional harm to a liberty

or property interest, which he cannot do.  *See Katz-Crank*, 843 F.3d at 650; *Alvarez Castro v.*

*Negron*, 475 F. Supp. 2d 147, 152–53 (D.P.R. 2007) (must have constitutional injury).

Second, the elements of any constitutional tort under § 1983 would be defined by

Washington law.  *Burbar v. Incorporated Village of Garden City*, 961 F. Supp. 2d 462 (E.D. N.Y.

2013).  In *Anderson v. City of Bellevue*, 862 F. Supp. 2d 1095, 1109 (W.D. Wash. 2012), the court

explained the elements for an abuse of process claim:

> The elements of a claim for abuse of process are (1) the existence of an ulterior
> purpose to accomplish an object not within the proper scope of the process, and (2) an
> act in the use of legal process not proper in the regular prosecution of the
> proceedings. *Mark v. Williams,* 45 Wash.App. 182, 191, 724 P.2d 428 (1986). *The*
> *crucial inquiry is whether the judicial system's process, made available to insure the*
> *presence of the defendant or his property in court, has been misused to achieve*
> *another, inappropriate end. Batten v. Abrams,* 28 Wash.App. 737, 745, 626 P.2d 984
> (1981).

(Emphasis added).  Homchick's claim fails for two reasons.

First, Homchick has no cause of action for abuse of process because Washington law

requires that abuse of process must be brought as a counter-claim.  *Pete v. Tacoma Sch. Dist. No.*

*10*, 198 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016) (citing cases).  "The Court is aware of no

authority for the proposition that a party to a lawsuit, who could have—but did not—allege an

abuse of process counterclaim, can later allege an abuse of process claim arising within a case in

another court."  *Id.*  It was certainly possible for Homchick to raise his abuse of process issues in

his criminal case and ask the court to dismiss his charges under its supervisory powers.  Other

members of the League brought such motions in the Superior Court, which ruled on them.  *E.g.*

*Montgomery Decl. ¶10, Ex. K.*

Second, Homchick does not meet the elements of the cause of action.  Prosecutorial

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    immunity prevents inquiry into the reasons for the prosecutor's charging decision, but the course

2    of proceedings indicates that charges were filed against Homchick because he committed a crime

3    that he later acknowledged in his guilty plea.  Even absent considerations of immunity, there is

4    no indication of an "ulterior motive" where charges were filed in an attempt to extort property or

5    money from Homchick.  *See* Restatement (Second) of Torts § 682 (1977) ("For abuse of process

6    to occur there must be use of the process for an immediate purpose other than that for which it

7    was designed and intended. The usual case of abuse of process is one of some form of extortion,

8    using the process to put pressure upon the other to compel him to pay a different debt or to take

9    some other action or refrain from it.").   Subject to fair trial rights, a press conference to

10   announce those charges, including its potential deterrent effects on other potential wrongdoers, is

11   commonplace and an accepted means for fulfilling open justice as well as other goals of the

12   criminal justice system.  Regardless, there is no "abuse of process" because a press conference is

13   not a legal process at all.  *See Batten v. Abrams*, 28 Wn. App. 737, 745–48, 626 P.2d 984, 988–

14   90 (1981) ("[T]here must be an act after filing suit *using legal process* empowered by that suit *to*

15   *accomplish an end not within the purview of the suit*.").

16        Finally, Prosecutorial immunity precludes Homchick's efforts to second-guess the

17   motives of the prosecutor by claiming that his prosecution and the charging decision were

18   somehow motivated Demand Abolition.  *See Broam v. Brogan,* 320 F.3d 1023, 1028 (9th

19   Cir.2003) (Absolute prosecutorial immunity is justified for actions "intimately associated with

20   the judicial phase of the criminal process.").  Nevertheless, the record shows that Prosecutor

21   Satterberg enacted an anti-demand strategy and applied for grants to support that strategy, not the

22   other way around.  There is no evidence or reasonable inference that small grants received from

23   Demand Abolition controlled KCPAO's prosecutorial discretion.  The prosecution of Homchick

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    extorted nothing and resulted only in a lawful guilty plea.

2        **3.      Qualified Immunity Precludes Homchick's Claim.**

3        Although Homchick has identified no violation of any constitutional right, no § 1983

4    abuse of process action is available to him because such a right is not clearly established.  There

5    is no established law that it is improper abuse of process for a prosecutor to hold a press

6    conference informing the public about new charges, the details of an important investigation, and

7    the impacts of a criminal enterprise.  Likewise, there is no established law that a prosecutor

8    violates constitutional rights by accepting a grant to help fund prosecutions in an area of interest.

9    In areas where absolute immunity does not apply, Prosecutor Satterberg is entitle to qualified

10   immunity.

11       **4.      Homchick Has No Claim Against King County.**

12       Homchick also has no claim against King County.  He directs his claim against "King

13   County and its agents."  *E.g.* SAC ¶¶ 161-63.  But it is well established that "liability of a

14   municipality cannot be predicated upon *respondeat superior* in an action brought under 42

15   U.S.C. § 1983."  *Collins v. City of San Diego*, 841 F.2d 337, 340 (9th Cir. 1988).  Homchick

16   points to no actions by King County itself, nor has he attempted to satisfy the requirements for a

17   *Monell* claim.

18   **C.   HOMCHICK HAS NO VIABLE STATE LAW CAUSES OF ACTION FOR
         DEFAMATION OR FALSE LIGHT INVASION OF PRIVACY, INCLUDING**
19       **AIDING AND ABETTING EITHER.**

20       The various problems with Homchick's state law defamation claim are well explained in

21   Section V-A above and do not bear repeating.  His defamation claims must be dismissed.

22       Like defamation, a false light invasion of privacy claim is subject to heightened summary

23   judgment standards.  *Seaquist v. Caldier*, 438 P.3d 606, 616 (Wash. Ct. App. 2019) (Due to First

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    Amendment considerations, "a plaintiff must present a prima facie case of false light to

2    overcome a motion for summary judgment.")  A false light claim arises when a defendant "(1)

3    publicizes a matter that places another in a false light, (2) the false light would be highly

4    offensive to a reasonable person, and (3) the defendant knew of or recklessly disregarded its

5    falsity." *Pete v. Tacoma Sch. Dist. No. 10*, 198 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016).

6    Because Homchick is a limited public figure and the speech involves matters of public concern,

7    the actual malice standard applies.  *Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1147

8    (W.D. Wash. 2007).

9         Although there are differences between defamation and false light claims, the similarities

10   make Homchick's cause of action untenable.  Most notably, there is no false light claim absent a

11   false statement, or a provably false statement.  *Seaquist*, 8 Wn.App.2d at 573.  Even if

12   Homchick's claims were correct, it is doubtful that a "reasonable person" would find it "highly

13   offensive" to conflate promoters of prostitution with Korean nationals with sex traffickers.

14   Matters of opinion do not support a false light claim.  *Purcell v. Am. Legion*, 44 F. Supp. 3d

15   1051, 1061 (E.D. Wash. 2014).  Here, Homchick's claims fall well-outside the scope of what

16   might be considered highly offensive for a false light claim.  *See  Purcell v. Am. Legion*, 44 F.

17   Supp. 3d 1051, 1061 (E.D. Wash. 2014) (Manager's statements that worker had "mental

18   problems" and PTSD not "highly offensive.").

19        With regard to both defamation and false light, Homchick claims that defendants are

20   liable for "aiding and abetting" allegedly defamatory statements by Chief Mylett.  These causes

21   of action fail because the underlying torts fail.  Nevertheless, there is no reasonable basis for

22   imposing a legal duty on Prosecutor Satterberg or Sheriff Urquhart to correct statements by Chief

23   Mylett; certainly, no such legal duty is owed to Homchick.  Homchick voluntarily dismissed

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Chief Mylett and the City of Bellevue from this case without any inducement or settlement.
There is no colorable theory for him to hold King County liable for the statements of a separate municipality.  Finally, no Washington case creates a cause of action for "aiding and abetting" defamation or false light and this court should decline to do so.  *See McKasson v. State*, 55 Wn. App. 18, 28, 776 P.2d 971, 976 (1989) (Finding "no reason to create such a cause of action" for another tort.).

## D.  HOMCHICK'S STATE LAW CLAIMS FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL.

Homchick's claim of negligent infliction of emotional distress fails for two reasons.  First, defendants owed him no duty of any sort, which precludes the claim.  *See   Goldsmith v. Snohomish Cty.*, 558 F. Supp. 2d 1140, 1157 (W.D. Wash. 2008) (claim requires duty and breach of duty).
Second, a negligent infliction claim requires claims of emotional distress to be supported by objective symptoms and medical diagnosis proved through medical evidence.  *Id.*; *Haubry v. Snow,* 106 Wash.App. 666, 678-679, 31 P.3d 1186 (2001).  Homchick has disclosed no such evidence.

As for intentional infliction or outrage, Homchick cannot satisfy the high bar applicable to successful causes of action:

> Outrage requires Plaintiff to demonstrate: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Rice v. Janovich,* 109 Wash.2d 48, 61, 742 P.2d 1230 (1987). Liability for outrage exists only where the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson,* 85 Wash.2d 52, 59, 530 P.2d 291 (1975).

*Goldsmith v. Snohomish Cty.*, 558 F. Supp. 2d 1140, 1157 (W.D. Wash. 2008).  The statements at the press conference, which clarify how the actions of sex buyer and promoters fit into the larger trafficking economy consistent with Homchick's own stipulation to the Certification and Prosecutor's Summary, do not meet this standard.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 24

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

## VI.   CONCLUSION

For these reasons, the court should grant summary judgment and dismiss Homchick's case.

DATED this 4ᵗʰ day of June, 2020.

DANIEL T. SATTERBERG

King County Prosecuting Attorney

By:  */s/ David J. Hackett*
DAVID J. HACKETT, WSBA #21236
Senior Deputy Prosecuting Attorney

By:  */s/ Amy E. Montgomery*
AMY E. MONTGOMERY, WSBA #32068
Senior Deputy Prosecuting Attorney

Attorney for King County Defendants
King County Prosecuting Attorney
500 Fourth Avenue, Suite 900
Seattle, WA 98104
Phone: (206) 296-8820 / Fax: (206) 296-8819
Email: david.hackett@kingcounty.gov
Email:  amy.montgomery@kingcounty.gov

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

## DECLARATION OF FILING AND SERVICE

2          I hereby certify that on June 4, 2020, I electronically filed the foregoing document with

3     the Clerk of the Court using the CM/ECF System which will send notification of such filing to

4     the following:

5     **Hozaifa Y Cassubhai**
BAILEY DUQUETTE PC

6     500 UNION STREET, STE 800
SEATTLE, WA 98101

7     206-617-7029
866-233-5869 (fax)

8     hozaifa@baileyduquette.com

9

10         I declare under penalty of perjury under the laws of the United States and the State of

11    Washington that the foregoing is true and correct.

12         DATED this 4th day of June, 2020.

13    _____

14    RAFAEL A. MUNOZ-CINTRON
Legal Assistant

15    King County Prosecuting Attorney's Office

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2:18-cv-00377-JLR - 26

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819